IN THE UNITED STATES DISTRICT COURT
                    FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| AMIT PATEL ) | |
|                       Plaintiff,  ) | |
| ) | |
| v.                                           ) | Case No. |
| ) | |
| DENIS RICHARD MCDONOUGH ) | |
| Secretary, U.S. Department of Veterans Affairs, ) | |
| 810 Vermont Avenue NW ) | |
| Washington, DC 20420 ) | |
|                       Defendant  ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Amit Patel, for his cause(s) of action against Defendant Denis Richard McDonough, in his official capacity as Secretary of The Department of Veteran Affairs (VA), states as follows:

### Parties

1.     Plaintiff Amit Patel is a natural person who is a resident and citizen of Overland Park, Johnson County, Kansas. At all relevant times herein, Plaintiff was a full-time employee of the United States Department of Veterans Affairs (VA). Specifically, Plaintiff was a Nephrologist.

2.     Defendant Denis Richard McDonough is a natural person who is sued only in his official capacity as Secretary United States Department of Veterans Affairs and is the designated Agency official to be named as the Defendant in actions against the Agency under all applicable federal statutes.

### Claims, Jurisdiction & Venue

3.     Plaintiff asserts federal statutory claims of retaliation for having engaged in protected activity under applicable federal employment anti-discrimination statutes

1

(including but not limited to Title VII of the CRA 1964, the ADEA, and the ADA/Rehabilitation Act) by opposing discriminatory practices thereunder and initiating and filing EEO complaints of discrimination and retaliation against the Agency.

4. Federal subject matter jurisdiction over Plaintiff's federal claims is conferred upon this Court by 28 USC 1331, 28 USC 1337, 28 USC 1343, 29 USC 623 et seq., 42 USC 2000e-3 et seq., and 42 USC 12203 et seq.

5. Venue is conferred upon this Court pursuant to 28 USC 1391(b)(2), in that a substantial part of the events giving rise to Plaintiff's claims occurred within this federal judicial district, Plaintiff was employed by Defendant within this federal judicial district, and Defendant's discriminatory and retaliatory actions occurred within this federal judicial district.

## FACTS COMMON TO ALL COUNTS

6. At all times relevant herein Plaintiff was continuously employed by the VA.

7. Plaintiff began his employment at the VA in October of 2021.

8. At all relevant times Plaintiff was employed by the VA at the VA Medical Center in Kansas City Missouri Located at 4801 Linwood Boulevard, KCMO 64128.

9. At all relevant times Plaintiff was employed by the VA as a Nephrologist.

10. At all relevant times Plaintiff's job performance was outstanding.

11. Plaintiff filed his formal EEO complaint on February 2, 2023.

12. Plaintiff is a member of the Hindi religion.

13. Plaintiff is a male.

14. At all relevant times Plaintiff's direct supervisor was Dr. Amina Khan, Section Chief for Nephrology.

15. Based upon information and belief, Dr. Khan is a Muslim Female.

16. Service Chief for Medical Subspecialty Clinics Dr. Kimberly Johnson

17. Complainant's third-level supervisor, the Chief of Staff Dr. Ahmad Batrash.

18. Throughout Plaintiff's employment, Dr. Khan would single out and disparately treated Plaintiff because of his male gender and his Hindu religion.

19. Dr. Khan had direct knowledge of Plaintiff's religion because Plaintiff displayed religious symbols of his Hindu religion on his desk, and wore a religious symbol on a necklace around his neck daily.

20. Plaintiff and Dr. Khan had discussed their religions during Plaintiff's employment.

21. In addition to Dr. Khan, nurse manager Debra West would undermine Plaintiff and treat him disparately from similarly situated female staff and doctors.

22. Dr. Khan would openly reprimand, criticize and subject Plaintiff to different standards than other Doctors.

23. Dr. Khan would subject Plaintiff and her staff to her religious beliefs and not allow him and others to order pork during staff lunches.

24. Pursuant to department and VA policy, on or about August 3, 2022, Plaintiff requested a scheduled leave for September 16-18, 2022, in writing to Dr. Khan.

25. Dr, Khan approved this request emailed the scheduler to reschedule any Patients Plaintiff had on those days.

26. On or about September 8, 2022, Plaintiff complained to Dr. Johnson and the Chief of Nursing Leann regarding the discrimination, harassment and disparate treatment based upon his religion and sex that he was experiencing from Dr. Khan and Nurse Manager Debra West.

27. Plaintiff complained that he felt his disparate treatment was discriminatory and that several other staff members had also brought up to him that they felt he was being discriminated against by Dr. Khan and Debra West.

28. Plaintiff complained that Khan was taking away his approved leave and that her treatment of him was discriminatory based upon his religion.

29. Despite Plaintiff complaints of discrimination based upon sex and religion, Dr. Johnson failed to properly initiate the EEO complaint process and instead initiated the Harassment Prevention Program (HPP).

30. The following week after making his complaints of discrimination and harassment, on or about September 15, 2022, Dr. Khan tried to rescind her approval of Plaintiff's previously approved leave.

31. On or about September 20, 2022, the week after Plaintiff made his complaints of discrimination based upon his sex and religion, Dr. Johnson emailed Plaintiff and told him that his clinical practice would be under review.

32. On that same day, Plaintiff initiated a complaint with ORMDI's Harassment Prevention Program (HPP) alleging harassment, discrimination, and retaliation for his complaints of discrimination and retaliation against Dr. Khan and Debra West.

33. Despite making complaints of discrimination – Plaintiff was erroneously instructed to file with HPP and not EEO.

4

34. According to VA policy, a Fact-Finding investigation (FFI) should have been initiated.

35. Plaintiff was never informed of the results of the investigation, nor was he notified if any had occurred during his employment.

36. Nurse Manager Debra West – who Plaintiff had recently made a complaint of discrimination about on September 8th and September 15th, reported to Dr. Khan incorrect information about the patient and Plaintiff treatment.

37. Subsequently, Dr. Khan made a report that Plaintiff had changed another patient's dialysis plan- even though it was Dr. Khan who made the changes in the patients file.

38. These changes are shown in the patients' medical records.

39. Even worse, Dr. Khan made her report and then changed the Patient's files to reflect the information in her report.

40. On or about September 30, Plaintiff had a dialysis patient who had a seizure while en route to the facility, and another seizure later during dialysis.

41. Plaintiff took all reasonable and necessary steps to protect the patient and acted appropriately in handling the seizures.

42. Further Dr. Khan filed a false report regarding the patient who had the seizure.

43. Dr. Khan was not at the facility on September 30, 2022, and therefore did not have the proper information to make a report against Plaintiff.

44. The false and fabricated report was a clear act of retaliation for Plaintiff complaints of discrimination and retaliation that he had filed mere weeks prior.

45. Dr. Khan admitted in her Affidavit on July 3, 2023, that the only information she used in making her report to Dr. Johnson and Dr. Batrash was the "Dialysis nursing note", and that when she made the report, she did not have first-hand knowledge of Plaintiff's care of the patient in question.

46. Further, Dr. Khan was still referring to "dialysis disequilibrium syndrome" in her affidavit in July 2023, despite the VAMC determining that this did not occur.

47. On or about October 3, 2022, the Medical Center Director notified Plaintiff that his clinical privileges were summarily suspended pending a retrospective Focused Clinical Care Review of his clinical practice, based on the recommendation of the Chief of Staff and the Chief of Medical Subspecialties Service.

48. Not a single supervisory employee for Defendant spoke to Plaintiff or asked for his version of events prior to suspending his privileges.

49. Dr. Johnson and Dr. Batrash failed to look at the medical records prior to issuing the suspension to Plaintiff.

50. Dr. Batrash did not institute Plaintiff's HPP complaint process until October 5, 2022. *After* he instituted Plaintiff's suspension.

51. Plaintiff begged both doctors to review the medical records before issuing his suspension, because the information Khan put in her report was factually incorrect.

52. When Defendant tasked an outside Doctor to review the suspension – they knowingly and intentionally did not provide the Doctor with the complete medical records of the seizure patient.

53. Johnson and Batrash failed to provide the complete record to the outside Doctor despite Plaintiff begging them to do so, because the complete records clearly exonerated Plaintiff.

54. On November 3, 2022, the Medical Center Director informed Plaintiff that his clinical privileges continued to be summarily suspended while awaiting the completion of the focused clinical review process by VA nephrologists outside of the Kansas City VAMC.

55. Plaintiff was suspended for forty-three days.

56. After Plaintiff's suspension was overturned by the VAMC, Defendant further retaliated against Plaintiff by placing Plaintiff on a focused professional practice evaluation (FPPE) "for cause."

57. Despite Plaintiff being cleared by VAMC, Defendants further showed their retaliatory animus for Plaintiff by placing Plaintiff on the focused professional practice evaluation (FPPE).

58. Despite the FPPE being "for cause" when issued Plaintiff the FPPE, they did not sign the document or properly go over the FPPE **in person** as per VA DIRECTIVE 1100.21(1).

59. VA DIRECTIVE 1100.21(1) states that the FPPE for cause must be in writing and . . . **signed by the clinical service chief** (emphasis added).

60. The FPPE was not provided to Plaintiff in person, nor was it provided to Plaintiff AT ANY TIME during his employment with Defendant.

61. The above reticence to follow VA DIRECTIVE 1100.21(1) shows that Defendant's institution of Plaintiff's suspension and FPPE for cause were clearly and blatantly retaliatory for his prior complaints of discrimination.

62. Dr. Johnson, Dr. Batrash and Dr. Khan blatantly retaliated against Plaintiff, and made his work environment intolerable.

63. On November 23, 2022, Dr. Khan approached Plaintiff and told him "I'm keeping an eye on you".

64. This was an intentionally retaliatory and harassing statement from a Supervisor who had already filed false and inaccurate reports against Plaintiff – with zero repercussions.

65. On November 23, 2022, Plaintiff resigned his employment due to continued harassment, retaliation, and fear for his career as nephrologist due to false and erroneous suspensions and gross violations of VA policy.

66. On December 8, 2022, Plaintiff initiated contact with an EEO Counselor for the VA.

67. Despite his resignation, Johnson and Batrash continued their intentional and egregious retaliation against Plaintiff.

68. While Plaintiff was applying for new jobs in January 2023, Dr. Johnson provided the unsigned and completely improper FPPE "for cause" to Plaintiff's potential employers.

69. The document she provided was a word document and was not signed by any VA employee.

70. This was the first time Plaintiff had ever been presented with the FPPE, when it was sent to a potential employer.

71. Of course, Plaintiff did not get the job.

72. Dr. Johnson knowingly provided the improper FPPE to Plaintiff's future employer on January 17, 2023.

73. The foregoing actions we egregious, spiteful and blatantly retaliatory, and intended to ruin Plaintiff's career even after he left employment with the VA.

74. Further Dr. Johnson failed to comply with the agency's investigation, and did not provide an affidavit.

75. Each and all of the foregoing actions and decisions by Plaintiff's management superiors was made without a valid and legitimate business reason.

76. Each and all of the foregoing actions and decisions by Plaintiff's management superiors was taken to retaliate against Plaintiff for his prior protected EEO activity and his initiation of the formal EEO process.

77. The foregoing actions and decisions by Plaintiff's management superiors caused Plaintiff actual damages for lost wages and lost future employment opportunities; actual damages from being held back from promotions, pay increases, and lost bonuses; and compensatory damages for emotional distress and trauma, interfered with his ability to perform his job, and adversely affected his job performance.

78. The foregoing actions have affected Plaintiff's stellar career with the VA and have stifled his opportunities for advancement within the VA and other branches of the federal government.

79. Plaintiff's suspension of clinical privileges has cast a negative light on his professional career and has hindered him from getting nephrology positions at other hospitals in the Kansas City metro.

80. The suspension was a topic brought up to him in job interviews outside of the VA system, because Plaintiff's management superiors shared information with hiring officials at other hospitals in further retaliation for his complaints of discrimination and retaliation.

81. The foregoing actions/decisions by management and the resulting consequences to Plaintiff have caused Plaintiff to believe subjectively and reasonably that he would not have engaged in protected activity under all applicable federal anti-discrimination statutes (as he did) had he known that Defendant's management and supervisors would have retaliated (as they in fact did).

82. Plaintiff's management superiors intentionally retaliated against Plaintiff because of his opposition to discriminatory practices in the workplace and his engaging in protected activity by initiating the EEO process, in violation of applicable federal anti-discrimination statutes, all as more fully described in the Agency EEO Case referenced above.

83. As a direct and proximate result of the Agency's discriminatory employment practices, Plaintiff suffered monetary damages, and severe emotional/psychological and physical distress, pain and suffering, humiliation, embarrassment, loss of sleep, anxiety, depression, and loss of enjoyment of quality of life and his job.

84. All conditions precedent and administrative exhaustion prerequisites to the filing of this action have been satisfied and complied with. This Complaint is timely filed within 90 days of Plaintiff's receipt of the Agency's Final Agency Decisions (FAD) on his administrative EEO complaints referenced above.

## Count 1 – Discrimination

85. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

86. During the course of Plaintiff's employment, Defendant's representatives, acting within the scope and course of employment, engaged in a pattern and practice of intentional discrimination and religious harassment against Plaintiff.

87. The Defendant's harassment had the purpose and effect of unreasonably interfering with Plaintiff's work performance thereby creating an intimidating, hostile and offensive working environment.

88. The conduct as described herein would have offended a reasonable person of the same race in Plaintiff's position.

89. Management level employees knew, or should have known, of the religious harassment and discrimination described herein, but failed to take appropriate remedial action.

90. By failing to conduct a prompt, thorough and honest investigation of Plaintiff's allegations and of other witnesses, Defendants exacerbated the racially hostile environment and discrimination in Plaintiff's workplace.

91. Because of its actions, Defendants deliberately rendered Plaintiff's working conditions intolerable.

92. Defendant, through its agents and employees, engaged in these discriminatory practices with malice or reckless indifference to Plaintiff's federally protected rights.

93. As a direct and proximate cause of the actions and conduct set forth herein, Plaintiff is now suffering and will continue to suffer damages, including emotional distress, and inconvenience.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment on Count 1 in his favor and against Defendant and award Plaintiff the relief requested below.

**Count 2 – Discrimination**

94. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

95. During the course of Plaintiff's employment, Defendant's representatives, acting within the scope and course of employment, engaged in a pattern and practice of intentional discrimination and sex/gender harassment against Plaintiff.

96. The Defendant's harassment had the purpose and effect of unreasonably interfering with Plaintiff's work performance thereby creating an intimidating, hostile and offensive working environment.

97. The conduct as described herein would have offended a reasonable person of the same sex in Plaintiff's position.

98. Management level employees knew, or should have known, of the sex/gender harassment and discrimination described herein but failed to take appropriate remedial action.

99. By failing to conduct a prompt, thorough and honest investigation of Plaintiff's allegations and of other witnesses, Defendants exacerbated the hostile environment and discrimination in Plaintiff's workplace.

100. Because of its actions, Defendants deliberately rendered Plaintiff's working conditions intolerable.

101. Defendant, through its agents and employees, engaged in these discriminatory practices with malice or reckless indifference to Plaintiff's federally protected rights.

102. As a direct and proximate cause of the actions and conduct set forth herein, Plaintiff is now suffering and will continue to suffer damages, including emotional distress, and inconvenience.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment on Count 2 in his favor and against Defendant and award Plaintiff the relief requested below.

## Count 3 - Retaliation

103. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

104. All At all times relevant herein Plaintiff was continuously employed by the VA.

105. At all relevant times Plaintiff's job performance was outstanding.

106. Ms. Khan had direct knowledge of Plaintiff's protected activity and complaints against her.

107. After July, 13, 2022, Plaintiff's working relationship immediately and drastically changed.

108. On or about September 19, 2022, Plaintiff filed a retaliation/workplace bullying complaint against Ms. Khan with the EPA's internal EEO Office.

109. Plaintiff's complaint was based upon his sex and religion (Hindi)

110. Plaintiff's Complaint constituted a reasonable, good faith belief that he suffered discrimination based upon his sex and religion.

111. Each and all of the foregoing actions and decisions by Plaintiff's management superior was made without a valid and legitimate business reason.

112. Each and all of the foregoing actions and decisions by Plaintiff's management superior was taken to retaliate against Plaintiff for his prior protected EEO activity and his initiation of the formal EEO process.

113. Because of its actions, Defendant deliberately rendered Plaintiff's working conditions intolerable.

114. No reasonable employee in Plaintiff's position would have remained employed at the VA.

115. Defendant utterly failed to properly investigate Plaintiff's complaints of discrimination and retaliation.

116. Defendant failed to properly initiate its internal EEO complaint process in September 2022 after Plaintiff's complaints of gender/sex discrimination and race discrimination.

117. Defendant wrongfully suspended Plaintiff in retaliation for his complaints of discrimination based on sex and religion.

118. The foregoing actions and decisions by Plaintiff's management superiors caused Plaintiff actual damages for lost wages and lost overtime opportunities; actual damages from being held back from promotions, pay increases, and lost bonuses; and compensatory damages for emotional distress and trauma, interfered with his ability to perform his job, and adversely affected his job performance.

119. The foregoing actions have affected Plaintiff's stellar career with the VA and have stifled his opportunities for advancement within the VA and have greatly affected his ability to gain and seek employment as a nephrologist.

120. The foregoing actions/decisions by management and the resulting consequences to Plaintiff have caused Plaintiff to believe subjectively and reasonably that he would not have engaged in protected activity under all applicable federal anti-discrimination statutes (as he did) had he known that Defendant's management and supervisors would have retaliated (as they in fact did).

121. Plaintiff's management superiors intentionally retaliated against Plaintiff because of his opposition to discriminatory practices in the workplace and his engaging in protected activity by initiating the EEO process, in violation of applicable federal anti-discrimination statutes, all as more fully described in the Agency EEO Case referenced above.

122. As a direct and proximate result of the Agency's retaliatory employment practices, Plaintiff has suffered monetary damages, and severe emotional/psychological and physical distress, pain and suffering, humiliation, embarrassment, loss of sleep, anxiety, depression, and loss of enjoyment of quality of life and his job.

123. All conditions precedent and administrative exhaustion prerequisites to the filing of this action have been satisfied and complied with. This Complaint is timely filed within 90 days of Plaintiff's receipt of the Agency's Final Agency Decisions (FAD) on his administrative EEO complaints referenced above.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment on Count 3 in his favor and against Defendant and award Plaintiff the relief requested below.

## **Prayer for Relief**

124. Plaintiff respectfully requests that this Court enter judgment on all Counts for Plaintiff and against Defendant, and:

a. declare that Defendant's actions and decisions referenced herein and elsewhere in the record constitute retaliation in violation of applicable federal anti-discrimination statutes;

b. restrain and permanently enjoin Defendant and its management from continuing to engage in discriminatory or retaliatory employment practices against Plaintiff;

c. order Defendant to make Plaintiff whole by awarding him all compensation to which Plaintiff is entitled and would have earned but for Defendant's actions and decisions;

d. award Plaintiff compensatory damages for his emotional and psychological distress caused by Defendant's actions and decisions in an amount of $300,000 on each claim;

125. award Plaintiff prejudgment interest on all back pay or other monetary compensation awarded, and the costs of this action, including reasonable attorney's fees and expenses, court costs, and expert witness fees and expenses.

## Demand for Jury Trial

126. Plaintiff demands trial by jury on all issues of fact.

## Designation of Place of Trial

127. Plaintiff designates the Western District courthouse in Kansas City, Missouri as the place of trial.

Respectfully submitted,

The Tourigny Law Firm, LLC

By:____Greg N. Tourigny
    Greg N. Tourigny MO # 71210

4600 Madison Avenue, Suite 810
Kansas City MO, 64112
(816) 945-2861
greg@tourignylaw.com